# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1716 | **DATE** | 2/7/2001 |
| **CASE TITLE** | INDUSTRIAL HARD CHROME vs. HETRAN, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment on plaintiffs' counts II and IV are granted for the reasons stated herein. Enter memorandum opinion and order.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 09 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 214 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | 01 FEB -8 PM 6:53 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

| | |
|---|---|
| INDUSTRIAL HARD CHROME, LTD., IHC LIMITED PARTNERSHIP, and BAR TECHNOLOGIES, L.L.C., ) ) ) ) ) Plaintiffs, ) ) v. ) ) HETRAN, INC. and GLOBAL TECHNOLOGY, INC., HELMUT OERTMANN, GTI ASSOCIATES, L.P., GISELA OERTMANN, and HGN, INC. ) ) ) ) ) ) Defendants. ) ) | Case No. 99 C 1716<br><br>The Honorable John W. Darrah<br><br>DOCKETED<br>FEB 0 9 2001 |

## MEMORANDUM OPINION AND ORDER

Defendants have filed a Motion for Partial Summary Judgment involving various contract claims in a complaint filed by Plaintiffs.

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through

specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

## FACTUAL BACKGROUND

Considering the undisputed facts from the parties' Local Rule 56.1(a) & (b) statements of material facts and exhibits (referred to herein as "Pls.' 56.1" and "Defs.' 56.1") and drawing all reasonable inferences from the evidence in Plaintiffs' favor, the facts, for purposes of resolving the motion, are as follows.

Defendant Hetran is a corporation organized and existing under the laws of the State of New York with its principal place of business in Orwigsburg, Pennsylvania. (Def.'s 56.1 ¶ 2). Hetran is a wholly owned subsidiary of Global Technology, Inc. (Def.'s 56.1 ¶ 2). Plaintiff Industrial Hard Chrome ("IHC") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Geneva, Illinois. (Def.'s 56.1 ¶ 3). At all relevant times, IHC was engaged in the business of chrome-plating and grinding steel rods. (Def.'s 56.1 ¶ 3).

On September 15, 1994, Plaintiff IHC accepted (both orally and by issuing a purchase order) Hetran's sales quote for a Hetran Bar Processing Cell, Model BPC-6000 (the "Cell") for a total purchase price of $5,953,756. (Def.'s 56.1 ¶ 6). Attached to the quote was a chart labeled "Annex

10", which stated that the Cell could process various diameters of steel bars at certain speeds.[1] (Pl.s' Ex. C). Annex 10 did not specify the tolerances[2] which could be achieved at the various "put-through" speeds. (Def.'s 56.1 ¶ 7).

On or about December 15, 1994, IHC made an initial down payment, totaling $2,056,485.00, to Hetran. (Compl. ¶ 38).

Several months after IHC accepted Hetran's Quote and after Hetran had begun to build the

---

[1]  Annex 10 consisted of the following production chart:

| Bar Diameter | Metal Removal | Finish Diameter | Contact Time per/min | FPM (Foot per minute) | Tons/ Hour | SFPM |
|---|---|---|---|---|---|---|
| 1.062" | .062" | 1.000" | 40<br>45<br>50 | 80 | 4.2<br>4.9<br>5.3 | 400<br>400<br>400 |
| 1.593" | .093" | 1.500" | 40<br>45<br>50 | 70 | 9.5<br>10.8<br>11.9 | 400<br>400<br>400 |
| 2.093" | .093" | 2.000" | 40<br>45<br>50 | 52 | 15.0<br>17.0<br>18.8 | 400<br>400<br>400 |
| 3.125" | .125" | 3.000" | 40<br>45<br>50 | 30 | 14.0<br>16.0<br>18.0 | 400<br>400<br>400 |
| 4.125" | .125" | 4.000" | 40<br>45<br>50 | 22 | 18.5<br>21.1<br>23.4 | 400<br>400<br>400 |
| 5.187" | .187" | 5.000" | 40<br>45<br>50 | 10 | 16.2<br>17.9<br>19.0 | 400<br>400<br>400 |
| 6.250" | .250" | 6.000" | 40<br>45<br>50 | 8 | 14.4<br>16.4<br>18.0 | 400<br>400<br>400 |

[2]  "Tolerance" refers to the slight deviations in a bar's diameter after it has been processed.

Cell, IHC and Hetran executed a written document dated February 28, 1995. (Def.'s 56.1 ¶ 8). This document was actually signed by the parties on May 23, 1995. Paragraph 19 of this document is specifically entitled "Equipment Guarantee" and states:

> EQUIPMENT GUARANTY. The equipment will be capable of producing 1" to 6" bars, productively removing standard steel industry stock allowances in a single pass and achieving a maximum finished tolerance of:
>
> 1.000" Diameter to 2.020" Diameter - .002
> 2.020" Diameter to 3.020" Diameter - .0025
> 3.020" Diameter to 4.020" Diameter - .003
> 4.020" Diameter to 5.020" Diameter - .004
> 5.020" Diameter to 6.020" Diameter - .005
>
> Additionally, the equipment will also be capable of producing bars to a straightness tolerance of .001 to .0015 TIR per foot, thereby enabling a single pass centerless grind to standard industry ground bar tolerance. All tolerances subject to operator ability.
>
> Furthermore, Hetran guarantees to work jointly with IHC to maximize the production and quality of product produced by the equipment.

Def.'s 56.1 ¶ 10. At issue is the intent of the parties regarding the relationship of the performance requirements set out in Annex 10 contained in the Quote of 9/15/95 and those provisions of Paragraph 19 in the document dated 2/28/95.

Plaintiffs have filed a seven-count fifth amended complaint and allege five contract-law claims[3]: (1) breach of contract, (2) breach of implied warranty, (3) breach of express guaranty, (4) breach of contract, and (5) breach of implied warranty of merchantability.

In paragraphs 11 to 47 of their Complaint, Plaintiffs make "allegations common to all claims." Plaintiffs allege that the 2/28/95 document "<u>further defined</u> its relationship and incorporated by reference the specific terms of both the September 12, 1994 quote and the December 15, 1994

---

[3] Counts VI and VII allege fraudulent conveyance and have been bifurcated.

purchase order." (Compl. ¶ 38).

Plaintiffs allege that the document <u>incorporated by reference</u> the speeds stated in Annex 10 and obligated the Defendant to provide a Cell which produced the tolerances stated in the document at the Annex 10 speeds. In ¶ 39 of their Fifth Amended Complaint, Plaintiffs allege the February 28, 1995 document "incorporated by reference the specific terms of both the September 12, 1994 quote and the December 15, 1994 purchase order." In ¶ 40, Plaintiffs allege that Hetran "agreed and warranted that the Cell would be capable of achieving specific tolerances as more fully stated in [the document] as well as the specifications stated in the September 12, 1994 quote."

Defendant controverts these allegations and has moved for summary judgment. Defendant's Motion shall be considered as to each count based on this material allegation regarding speed and tolerance provisions as concurrent..

Count I of Plaintiffs' Complaint appears to plead a cause of action based on separate obligations included in the 9/15/94 Quote (which encompassed Annex 10) and the 2/28/95 document (which included Paragraph 19). Plaintiff's Count I does not depend upon a construction that Paragraph 19 and Annex 10 state concurrent performance requirements.

Count II states a cause of action based on "implied warranty of fitness for a particular purpose." Here, Plaintiffs allege that, at the time of the quote, Defendant knew that Plaintiff desired a cell which could produce the tolerances later specified in Paragraph 19 at the speeds stated in Annex 10. Plaintiff's ¶ 52 states:

> At the time of Hetran's quote and IHC's acceptance thereof, Hetran knew of the particular purposes for which IHC required the Cell; including, without limitation, that steel rods could be processed with a single pass through the Cell, that the Cell could consistently operate at speeds of 80 feet per minute, that steel rods ranging in diameter from 1" to 6" could be processed through the Cell in a single pass and that

the specified tolerances and performance criteria contained in Exhibit 1 and agreed
to by Hetran could be achieved.

In this claim, Plaintiffs essentially allege that both parties to the contract intended it to obligate Defendant Hetran to supply a Cell which produced the tolerances of Paragraph 19 at the speeds stated in Annex 10.

Count III states a cause of action based on an alleged breach of the "express equipment guarantee" found in Paragraph 19 of the document dated February 28, 1995. This cause of action does not depend on the joint reading of Annex 10 and Paragraph 19 challenged by the Defendant.

Count IV alleges that Defendant Global breached the contract since the "Cell has not performed as stated in Exhibit I." Exhibit I refers to and includes both Paragraph 19 and Annex 10 as one single agreement without distinction of the separate performance provisions in Paragraph 19 of the 2/28/95 document and Annex 10 of the 9/15/94 Quote.

Count V states a cause of action for breach of an implied warranty of merchantability. Plaintiffs allege that Hetran warrantied that the goods "would be merchantable and fit for the ordinary purposes for which such goods are used." (Compl. 16). This cause of action is not based on the premise that Paragraph 19 and Annex 10 stated one unified obligation.

Plaintiffs' "Response to Defendants' Motion" restates and reinforces the construction that Paragraph 19 and Annex 10 are to be read together and provide concurrent production requirements. Plaintiffs argue that "the law and undisputed facts clearly demonstrate that the Court must read Paragraph 19 and Annex 10 as a whole and give effect to both provisions." (Pl. Res. 4). Plaintiffs further argue that "it is undisputed that the contract between the parties contains warranties regarding (1) the speed at which the Cell will operate, and (2) the quality of processed bar, namely

the finish tolerances." (Pl. Res. 4). On page 6, Plaintiffs argue that "under the express terms and conditions of the contract, Defendants were required to, among other things, deliver a Cell which could process 1" diameter bars at 80 feet per minute and achieve a finish tolerance range of .000" to .002"." Lastly, on page 7, Plaintiffs conclude that "the only reasonable construction of the contract is to read it as a whole, giving effect to Annex 10, Paragraph 19, and all the other terms and conditions." Plaintiff's response does not distinguish this rationale as applicable to only certain counts. To the contrary, it implies all counts should be based on this theory of contract construction.

## LEGAL BACKGROUND

Defendant had previously filed a motion in limine before Judge Alesia regarding the 9/15/94 and 2/28/95 agreement. Plaintiffs argue this is the "law of the case" which must defeat Defendant's motion for summary judgment on this issue. Plaintiffs' response in this regard as to the present issue before the Court, once again, does not differentiate among the five counts. Judge Alesia stated in his opinion that "Defendants do not argue, nor can the court find, that there are any ambiguities on the face of the contract. The Court will not look to letters and communications between the parties to determine whether an explicit portion of the contract was part of the actual agreement." *Industrial Hard Chrome v. Hetran*, 92 F.Supp. 2d 786, 792 (N.D.IL 2000). In his decision, Judge Alesia considered the document dated February 28, 1995 as stating one independent obligation. Judge Alesia therefore refused to consider extrinsic evidence.

Consistent with Judge Alesia's reasoning, and as more fully set out below, this Court finds as a matter of law that the 2/28/95 document did not incorporate by reference Annex 10 of the 9/15/94 Quote. Paragraph 19 of the document is not ambiguous, and the document did not incorporate the speeds specified in Annex 10 so as to obligate Defendant to provide a Cell which

produced bars with the tolerances of the document at the speeds specified in Annex 10. Therefore, extrinsic evidence is not properly considered since it is clear that the two writings evidence separate and distinct obligations.

Contract interpretation, including the question of whether a contract is ambiguous, involves conclusions of law. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1035 (1998). In a diversity case, the Court applies federal procedural law and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). Rules of contract interpretation are treated as substantive to maintain consistency of adjudication between state and federal diversity contract cases. *A.M. Internat'l Inc. v. Graphic Management Assoc., Inc.*, 44 F.3d 572, 576 (7th Cir. 1995). Illinois follows the "four corners" rule of contract interpretation. *Bourke v. The Dunn & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Under this approach, the Court will give effect to the intention of the parties as determined by the contractual language alone. *Id.* Only when the contractual language is ambiguous may the Court turn to parole evidence. *Id.* (citing, *Florida Bank & Trust v. Czyzewski*, 222 Ill. App. 3d. 382 (1991). A contractual provision is ambiguous when its language is susceptible to more than one meaning. *Meyer v. Marilyn Migling, Inc.*, 273 Ill.App. 3d. 882, 888 (Ill. App. Ct. 1995).

## ANALYSIS

As set out above, Paragraph 19 of the document is not ambiguous on its face, and does not attempt on its face to include Annex 10. Moreover, where the 2/28/95 document does refer to Annex 10, it does so in the extremely limited and specific Paragraph 9(d). Paragraph 9(d) of the 2/28/95 document states:

Hetran agrees to supply a serviceman/ operator in the IHC plant for fifty weeks from

> the commencement of the IHC operation of the bar processing cell for the purpose of on site supervision and education of IHC maintenance personnel on schedule and unscheduled maintenance and to supervise and instruct on a continual basis IHC operators, as well as insure production is maintained at the stated target as shown in Quote #1277B."

Paragraph 9(d) did not explicitly or implicitly incorporate Annex 10 by reference. Contrary to Plaintiffs' assertions, Paragraph 19 reflects no manifest intent of the parties to incorporate by reference Annex 10 into the document of 2/5/95. Contracts are to be "interpreted in accordance with the manifest intention of the parties" rather than the subjective intent of one party. *Foxfield Realty, Inc. v. Kubala*, 287 Ill.App.3d 519, 523, 678 N.E.2d 1060, 1062 (Ill. App. Ct. 1997). It is clear the parties did not intend to incorporate the provisions of Annex 10 into the document of 2/25/95 in any other sections. Paragraph 9(d) of the document, is the only section to reference the #1277B Quote of Annex 10. This provision merely states that Hetran will provide a serviceman/operator in the IHC plant to train and assist IHC personnel to achieve the "stated target as shown in Quote #1277B." Paragraph 9(b) does not incorporate by reference into the 2/28/95 document the provisions of the #1277B Quote. Had the parties intended the Cell to produce the tolerances discussed in Paragraph 19 of the document at the speeds referenced in Annex 10, they could/should have included these speeds in the body of the document. A court "will generally not imply a term in the face of the parties' expressed intent to the contrary." *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42 (2nd Cir. 1988). Furthermore, since the specific controls over the general in contract interpretation, *Boatman's Nat'l Bank of St. Louis v. Smith*, 835 F.2d 1200, 1203 (7th Cir. 1987), the parties' decision to omit the specific speeds stated in Annex 10 from the document dated February 28, 1995, controls over the more general statement: "maximize the production."

IHC essentially contends that its incorporation of the speeds referenced in Annex 10 into the

-9-

representations in Paragraph 19 regarding finished diameter and straightness tolerances is warranted because Annex 10 is supposedly "more specific" than Paragraph 19 regarding operating speed.

This general/specific argument applies only where the two contract provisions in question address the same subject matter. *Save Our Little Vermillion Environment, Inc. v. Illinois Cement Company*, 311 Ill. App. 3d 747 (2000)(general terms are to be construed as applying only to things of the same general class as those discussed). *Pruett v. LaSalceda, Inc.*, 45 Ill. App. 3d 243, 246 (1977)(general statement limited to "include only those things or situations of the same type or classification as the specific words").

Thus, the Court first determines whether Annex 10 and Paragraph 19 address the same thing. It is clear, they do not – Paragraph 19 concerns whether the Cell can process a bar such that it can be ground in a single pass. Accordingly, Paragraph 19 includes a guarantee by Hetran that the Cell will be capable of achieving specified finished tolerance capabilities. Paragraph 19 does not address speed, generally or specifically. Conversely, Annex 10 concerns production, *i.e.*, how many tons of steel bar one could expect to process through the Cell, given the respective entry size of the bar, and throughput speeds. Annex 10 omits reference to finished tolerances, generally or specifically. In short, neither provision can be considered to be a more specific statement on a topic than the other.

If Annex 10 and Paragraph 19 addressed the same subject matter, which they do not, the Court would then determine whether the two provisions created an ambiguity, as the general versus specific analysis of contract construction applies only when two provisions create an ambiguity.

Because Paragraph 19 and Annex 10 do not address the same subject matter, they necessarily cannot create an ambiguity. Annex 10 and Paragraph 19 represent independent and distinct performance obligations.

Even if the document was ambiguous on its face, the extrinsic evidence, if it were to be considered, demonstrates that the parties did not intend to incorporate the speeds in Annex 10 into the tolerances and single-pass provision of the document.

In its footnote six, Plaintiffs contend that "it was always understood between the parties that the Cell had to perform at <u>certain speeds</u> and <u>tolerances</u>." (Pl. Res. 6). Plaintiffs' footnote six references conversations which allegedly took place in August, 1994 and on September 14, 1994, around the time Plaintiffs accepted Defendant's offer, of which Annex 10 was a part. (Pl. Res. 6). Plaintiffs' extrinsic evidence regarding "certain speeds" is inadequate to support their claim that the parties intended the Cell to achieve the tolerances specified in the document at the speeds referenced in the Quote. The document was signed on February 8, 1995. (Def.'s 56.1 ¶ 8). Furthermore, these discussions concerning speed took place in June and August of 1994, while the new tolerances were only included in the document which was signed in February of 1995. Once more, IHC's representatives conceded in deposition that Hetran never orally represented throughput speeds or production levels that would apply to the tighter tolerances set forth in Paragraph 19 of the document.

## **CONCLUSION**

It is apparent from a review of Annex 10 and Paragraph 19 that they are not inter-related but, rather, set forth separate and distinct performance provisions. Plaintiffs in their Complaint incorporate previous allegations stating a theory of unified construction of Paragraph 19 and Annex 10 in all five counts. However, Counts I, III, and V state a cause of action based on other valid independent theories regardless of these invalid introductory allegations which Plaintiffs title as "Allegations Common to all Claims" and re-plead at the beginning of each count. The challenged

allegations regarding unified construction of Paragraph 19 and Annex 10 will be read as mere surplusage to those counts which state the elements of a cause of action on other grounds. For the reasons stated herein, Defendants' Motion for Summary Judgment on Plaintiffs' Counts II and IV is GRANTED.

**IT IS SO ORDERED.**

Date: February 7, 2001

John W. Darrah, Judge
United States District Court